# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) | Criminal No. 13-240 |
|  | ) | Judge Nora Barry Fischer |
|  | ) |  |
| BRANDON KENNEDY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## **MEMORANDUM ORDER**

**I.     INTRODUCTION**

Presently before the Court is Defendant's *Pro Se*[1] Motion to Dismiss Indictment, filed on March 24, 2014. (Docket No. 45). The Government filed its Response on April 4, 2014, (Docket No. 54), and Defendant replied on April 21, 2014, (Docket No. 55). The Court held an evidentiary hearing and oral argument as to such motion on April 23, 2014. (Docket No. 56). Upon consideration of the parties' submissions and the evidence of record, and for the following reasons, Defendant's Motion to Dismiss [45] is denied.

**II.    FINDINGS OF FACT**

Through this Motion, Defendant alleges that Assistant United States Attorney Craig Haller and ATF Agent Maurice Ferentino knowingly presented false information to the grand jury in order to secure the indictment. (Docket Nos. 45; 56). During the April 23, 2014 hearing, Defendant moved three exhibits into evidence in order to demonstrate the alleged prosecutorial

---

[1] Defendant was initially represented in this matter by the Federal Public Defender. On March 28, 2014, he waived his right to counsel elected to proceed *pro se*, with stand-by counsel. (Docket Nos. 51; 52).

1

misconduct. (Docket Nos. 56-2; 56-3; 56-4).[2]

The relevant facts are as follows. On November 26, 2012, at approximately 7:40 p.m., an individual entered an AT&T Wireless retail store located at 970 Greentree Road, Pittsburgh, PA 15220, and proceeded to rob the store. (Def. Ex. 1 at 3, Docket No. 56-2). Video surveillance camera images and statements by witnesses indicate that the suspect was an African American male wearing a grey hooded sweatshirt, black shoes with brown laces, and a mask. (*Id.*). Additionally, the suspect carried a chrome and black semi-automatic pistol. (*Id.*). The suspect ordered the two employees into a back inventory room and then handed the employees two bags, ordering them to fill the bags with Apple mobile devices. (*Id.*). Once they complied, the suspect ordered the employees to the ground and left the store. In all, fourteen Apple iPhones, twelve Apple iPads, three Samsung mobile devices, and one Asus tablet were stolen, along with $67.00. (*Id.*).

Later that evening, at approximately 11:40 p.m., South Rockwood (Michigan) Police Officer David Salamas conducted a traffic stop on a 2011 white Chevrolet Aveo, on Northbound Interstate 75 and South Huron River Drive, in South Rockwood, Michigan.[3] (*Id.* at 3–4). Defendant was in the car's passenger seat, and Amanda Lang was driving. (*Id.* at 4). Officer Salamas later recalled that Defendant was wearing "an athletic grey sweatshirt, grey sweatpants with elastic bottoms and dark boots with lighter colored (than the boots) stitching and laces." (*Id.*).[4] Defendant was arrested on an outstanding warrant, and Ms. Lang was arrested for driving

---

[2] The Government did not object to these Exhibits being received into evidence. The Government did note, however, that Defendant's exhibits contain selected portions of discovery materials that the Government has produced to Defendant during pretrial proceedings. (Docket No. 56).

[3] The Court notes that a map of this location indicates that the traffic stop is approximately 265 miles, by car, from the location of the robbery.

[4] During the subsequent investigation, Agent Ferentino sent Officer Salamas a color, still

2

under the influence. (*Id.* at 1). The vehicle was then towed. An inventory search of the vehicle revealed two bags in the car's trunk that contained twenty-six iPhones and iPads. (*Id.*). These items were later determined to be the electronics that were stolen from the AT&T store on Greentree Road. (*Id.*). Additionally, a Ruger .45 caliber Model P345 chrome and black firearm was found inside the vehicle. (*Id.*).

When questioned that night about the Apple products found in the trunk, Defendant told Officer Salamas that he had purchased these items from a friend in Ohio for $1200. (*Id.*). Defendant averred during the April 23, 2014 Motion Hearing that he regularly buys, sells, and repairs Apple products. (Docket No. 56).

On September 10, 2013, Defendant was indicted with three offenses relating to the November 26, 2012 robbery of the AT&T store. (Docket No. 1). At Count 1, Defendant is charged with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). At Count 2, Defendant is charged with Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). At Count 3, Defendant is charged with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).[5]

## III. LEGAL STANDARD

The Fifth Amendment to the United States Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." The grand jury serves as a referee or buffer between the government and

---

photograph of the suspect taken from the AT&T store's surveillance equipment. (Def. Ex. 1 at 2). Officer Salamas confirmed that the suspect was wearing the exact clothing as he had described Defendant as wearing during the traffic stop. (*Id.*).

[5] Defendant had been convicted of a prior felony, Fleeing from a Police Officer in the Third Degree, in violation of Michigan Compiled Law § 257.602a(3). That case was adjudicated in the Third Judicial Circuit Court of the State of Michigan (Wayne County), at Case Number 10-013196-01-FH. (*Id.*).

the people. *United States v. Williams*, 504 U.S. 36, 47 (1992). It is an accusatory body that sits "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." *Id.* at 51; *Bracy v. United States*, 435 U.S. 1301, 1302 (1978). In light of "the grand jury's singular role in finding the probable cause necessary to initiate a prosecution," courts generally lack authority "for looking into and revising" the grand jury's judgment. *Kaley v. United States*, __ U.S. __, 132 S. Ct. 1090, 1097–98 (2014) (citing *Costello v. United States*, 350 U.S. 359, 362–63 (1956)).

A defendant who seeks to set aside an indictment bears a heavy burden. *United States v. Fenton*, Crim. No. 98-01J, 1998 WL 356891, *4 (W.D. Pa. June 29, 1998) (Brooks, J.). A district court generally lacks supervisory power over the grand jury proceedings. *Williams*, 504 U.S. at 47 ("as a general matter at least, no such 'supervisory' judicial authority exists"). Courts may exercise this narrow degree of authority only "if it is established that the violation substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255–56 (1988) (citing *United States v. Mechanik*, 475 U.S. 66 (1986)).[6] Well-developed case law establishes that "only where violations of positive law embodied in a rule of criminal procedure, a statute or the Constitution are raised may a court review an indictment with a view toward possible prejudice in the grand jury proceedings." *Fenton*, 1998 WL 356891, at *6 (citing *In re Grand Jury*, 103 F.3d 1140, 1145 (3d Cir. 1997) ("Judicial supervision and

---

[6] The Supreme Court further identified "isolated exceptions" wherein harmless-error analysis is unnecessary because the grand jury's structural protections have been so compromised that that the proceedings are "fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 at 257. The Court identified racial and gender discrimination in grand jury composition as warranting this exception. *Id*. (citing *Vasquez v. Hillery*, 474 U.S. 254 (1986) (racial discrimination in selection of grand jury); *Ballard v. United States*, 329 U.S. 187 (1946) (women excluded from grand jury pool)). These exceptions are not at issue here.

interference with grand jury proceedings should always be kept to a minimum")). "Whatever supervisory power does exist, it does not permit judicial review of errors which impact only upon the quality and reliability of the evidence considered by the grand jury." *Id.*

IV. **DISCUSSION**

In his Motion to Dismiss the Indictment, Defendant contends that the Government intentionally misled the grand jury and used perjured testimony to secure the charges against him. (Docket Nos. 45; 55 at 4; 56). He points to materials he obtained through discovery which, he asserts, establish that he was not wearing the same clothes as the suspect who robbed the AT&T store, and therefore demonstrate his innocence. (Docket No. 56). Defendant argues that this evidence leaves no doubt that the Government was aware that he did not commit the crimes for which he is charged, bolstering his claim that the Government intentionally misled the grand jury. (Docket Nos. 45; 55; 56). In response, the Government asserts that, with respect to Defendant's claims regarding false and misleading evidence being presented to the grand jury: "This claim is completely bogus. The claim would lack merit even if it was not completely bogus." (Docket No. 54 at 1).

As an initial matter, Defendant's contentions are based entirely on speculation. (Docket No. 56). Defendant's Motion attacks the Government's conduct in securing an indictment from the grand jury. (Docket Nos. 45; 56). The grand jury proceedings, however, have not been disclosed and rightfully remain secret. *See* FED. R. CRIM. P. 6. Defendant directs the Court only to information he received during discovery, from which he <u>infers</u> that this same evidence was presented to the grand jury. (Docket No. 56). *See Giles v. California*, 554 U.S. 353, 371 (2008) ("the standard practice since approximately the 17th century has been to conduct grand jury proceedings in secret, without confrontation, in part so that the defendant does not learn the

5

State's case in advance"); *United States v. Slade*, Crim. No. 12-0367, 2013 WL 3344341, *4–5 (E.D. Pa. July 3, 2013) (denying request for disclosure of grand jury materials based on importance of maintaining grand jury's secrecy and defendant presented mere allegations about his need for grand jury record). In this Court's estimation Defendant's speculation cannot support the "drastic" step of dismissing the indictment. *United States v. Muhammad*, 336 F. App'x 188, 193 (3d Cir. 2009) (quoting *United States v. Morrison*, 449 U.S. 361, 365 n.2 (1981)).

Even putting aside this speculation issue, Defendant's Motion must still be denied. During the Motion Hearing, Defendant made much of evidence that, he argues, shows that he was not wearing the same clothing as the suspect. (Docket No. 56). In essence, he asserts that said evidence is exculpatory. (Docket Nos. 55; 56). Defendant further alleges that AUSA Haller and Agent Ferentino both lied to the grand jury by making statements that his clothing matched that of the suspect. (Docket No. 55 at 8–10). In the event that Defendant's allegations were true, and that the Government did present perjured testimony and withheld exculpatory information from the grand jury, this Court does not have the power to dismiss the grand jury's indictment on such grounds. *See, e.g.*, *Williams*, 504 U.S. at 52, 55 (holding that courts have no authority to require the Government to disclose exculpatory evidence to a grand jury); *United States v. Soberon*, 929 F.2d 935, 940 (3d Cir. 1991) (holding that the introduction of perjured grand jury testimony generally does not warrant dismissing an indictment); *United States v. Destio*, 153 F. App'x 888, 892 (3d Cir. 2005) ("A defendant is not entitled to challenge an indictment on the ground that it is not supported by adequate or competent evidence."); *United States v. Calandra*, 414 U.S. 338, 346 (1974) ("The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an

indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.") (citing *Costello v. United States*, 350 U.S. 359 (1956)).

Therefore, the Court finds that Defendant's allegations regarding the competence of the evidence presented to the grand jury are "beyond this court's authority to review." *Fenton*, 1998 WL 356891, at *7; *United States v. Dynkowski*, 720 F. Supp. 2d 475, 480 (D. Del. 2010) (finding a defendant's arguments about the sufficiency of evidence and failure to submit exculpatory evidence to the grand jury did not compel dismissal of the indictment.) *See also Kaley*, 134 S. Ct. at 1098 ("The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime."). Accordingly, Defendant's arguments that he has been wrongly accused and misidentified are more properly raised at trial as a defense to the charges. *Dynkowski*, 720 F. Supp. 2d at 480 ("Whether the evidence is sufficient to prove that [the defendant] committed the charges is a question for the jury, not this court."); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) (finding that "no actual assessment of the government's evidence can be made" until there is a trial). The indictment thus remains valid on its face, and is sufficient to advance the case to trial. The arguments within Defendant's Motion are more properly arguments to be raised at trial. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("There is no criminal corollary to the civil summary judgment mechanism.") (citing *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000)).

### V. CONCLUSION / ORDER

For the reasons stated above,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment [45] is

DENIED, with prejudice.

IT IS FURTHER ORDERED that a Hearing and Oral Argument on Defendant's Motion to Suppress [22] and Defendant's Motion to Produce Rule 404(b) Evidence [23] is scheduled for **May 23, 2014 at 9:00 a.m.**

                                                 */s Nora Barry Fischer*
                                                 Nora Barry Fischer
                                                 United States District Judge

Date: May 1, 2014

cc/ecf: All counsel of record

      Brandon Kennedy
      DOC # 172615
      Allegheny County Jail
      950 Second Ave.
      Pittsburgh, PA 15219