**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 13-240 |
| | ) | Judge Nora Barry Fischer |
| BRANDON KENNEDY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

I. INTRODUCTION

On December 18, 2014, at the conclusion of a jury trial, Defendant Brandon Kennedy was found guilty of all three counts against him in the Indictment at Criminal No. 13-240 related to his armed robbery of an AT&T Wireless retail store in Greentree, Pennsylvania on November 26, 2012.[1]   (Docket No. 107).   Prior to trial, the Court denied Defendant's motion to suppress evidence challenging the traffic stop of a vehicle he was riding in as a passenger in South Rockwood, Michigan several hours after the robbery and the seizure of evidence therefrom.   *See United States v. Kennedy*, Crim. No. 13-240, 2014 WL 6090409 (W.D. Pa. Nov. 13, 2014); (Docket No. 84).   Presently before the Court is a dispute surrounding the sufficiency of the evidence supporting the Probation Office's assessment of a two-level enhancement under Guideline § 3C1.1 for obstruction of justice in the Presentence Investigation Report to which Defendant has lodged an objection.   (Docket Nos. 118, 120, 122, 127, 139, 141).   The Government asserts that such enhancement is warranted based on Defendant's behavior at the July 30, 2014 pretrial suppression hearing during which he allegedly: attempted to influence the testimony of his girlfriend, Brittany Taylor, whom he had called as a witness; and, committed

---

[1]      Specifically, Defendant was convicted of: one count of Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); one count of Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), at Counts 1-3 of the Indictment.   (Docket No. 1).

perjury by testifying falsely concerning his whereabouts and activities on the day of the robbery. (Docket Nos. 122, 139). Defendant opposes the inclusion of the enhancement arguing that the evidence is insufficient to support its application and also argues that his testimony was not material to the Court's decision denying his suppression motion. (Docket Nos. 120, 127, 141).

The evidentiary record as to this dispute is robust with the parties' submission of the official transcripts from the pretrial suppression hearing, (Docket No. 79), the December 2014 jury trial of this matter, (Docket Nos. 123-126), and a separate evidentiary hearing held on May 1, 2015, (Docket No. 133), all of which this Court presided over. This highly contested matter has also been thoroughly briefed with the parties filing position statements, objections and briefs in response to the Presentence Investigation Report as well as their submission of post-hearing findings of fact and conclusions of law. (*See* Docket Nos. 118, 120, 122, 127, 139, 141). After careful consideration of the parties' arguments and all of the evidence of record, and for the following reasons, the Court finds that the Government has met its burden to demonstrate by a preponderance of the evidence that the assessment of the enhancement under Guideline § 3C1.1 is appropriate.

## II. BACKGROUND[2]

The scene of the alleged misconduct supporting the enhancement for obstruction of justice was Courtroom 5B where this Court presided over the suppression hearing on July 30, 2014.[3] (Docket No. 79). As always, Court staff were present in the courtroom throughout the

---

[2] The Court notes that the background information set forth herein is limited to those facts and circumstances necessary to resolve the pending dispute. A more thorough rendition of the background and procedural history is set forth in the Court's prior decisions in this case denying Defendant's Motion to Transfer (Docket No. 41), Motion to Dismiss the Indictment (Docket No. 57), and Motion to Suppress Evidence, (Docket No. 84).

[3] A non-scaled depiction of the courtroom layout is published on the Court's website. *See* http://www.pawd.uscourts.gov/Documents/CourtTechnology/Ambrose%20Cercone%20etc.pdf (last visited 9/14/15). To the extent necessary, the Court takes judicial notice of the layout of the courtroom of which the Court is intimately familiar. *See United States v. Tagliamonte*, 340 F. App'x 73, 80 (3d Cir. 2009) (noting that the district judge was "[i]ntimately familiar with the layout of the courtroom."). Further, there is no prejudice to the

proceedings at their traditional work stations facing the counsel tables and the gallery including: the undersigned seated at the Bench positioned above the other individuals in the courtroom, with the witness stand directly to the Court's left; and, two law clerks as well as the official court reporter directly in front of the Bench, with the witness stand located behind and above them to their left. *See* n.3. There is a podium in the well which can be utilized by attorneys questioning witnesses located directly in front of the Court's Bench and one of the clerk workstations. *Id.* The jury box – which was not used in this proceeding – is to the Court's left. *Id.* In a criminal case such as this one, the prosecution sits at the counsel table to the Court's left, closest to the jury box and the criminal defendant and his attorney use the counsel table to the Court's right. *Id.* Each counsel table is equipped with two chairs and a single computer screen which generally is placed in the middle of the table. *Id.* The podium is essentially positioned in the center of the active area of the courtroom. *Id.*

The prosecutor, Mr. Haller, was seated at the prosecution table and was joined by Government witness, Officer David Salamas of the Village of South Rockwood Police Department, at all times when he was not testifying on the witness stand. (Docket No. 79 at 2). The record does not establish if Mr. Haller remained at counsel table or moved up to the podium when he questioned witnesses during the suppression hearing. ATF Special Agents Maurice Ferentino and James Fidler were seated in the gallery behind the prosecution table. (*Id.* at 2; Docket No. 133 at 14). Defense counsel, Mr. Aston, and Mr. Kennedy were primarily located at the defense table to the Court's right. (Docket No. 79 at 2). Mr. Kennedy, who was in custody

---

Government or Defendant, as the parties and counsel are equally familiar. The Federal Rules of Evidence are not applicable in sentencing proceedings. *See United States v. Freeman*, 763 F.3d 322, 337 (3d Cir. 2014) (citing Fed. R. Evid. 1101(d)(3)). But, relevant here, Rule 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Certainly, it is within the Court's purview to judicially notice and describe the general courtroom layout.

of the United States Marshal Service at the time of the hearing, remained seated to the far right of counsel table except during his testimony. (*Id.* at 2-3). The record makes no reference to whether Mr. Aston questioned witnesses from counsel table or the podium. Two Deputy United States Marshals, one of which was Deputy Dennis Walker, were seated directly to the Court's right of the defense table, near the door to the holding cell. (Docket No. 133 at 6-7). The Deputy Marshals were positioned around 10 feet from where Defendant was seated. (*Id.* at 7).

Defendant's girlfriend, Ms. Brittany Taylor, also appeared and testified. (Docket No. 79 at 2). She was sequestered prior to her testimony and was excused at its conclusion but remained in the rear of the courtroom to observe the balance of the proceedings. (*Id.*).

As the Court noted in its decision denying Defendant's suppression motion, he had challenged the constitutionality of a traffic stop and search of the rented Chevy Aveo within which he was riding as a passenger in Michigan, and the seizure of evidence therefrom, arguing that his rights secured under the Fourth Amendment were violated by the responding law enforcement officers. *See Kennedy*, 2014 WL 6090409 at *4-6. The Court also held that because the search and seizure took place in Michigan, that it would evaluate the conduct of the law enforcement officers in light of Michigan and Sixth Circuit law, to the extent that it differed from Third Circuit law.[4] *Id.* at *5. The Government countered Defendant's motion raising several alternative theories including:

- that law enforcement had reasonable suspicion to stop the car and seize the occupants for a speeding violation;

- that Defendant lacked standing to contest the evidence he sought to suppress because he had no reasonable expectation of privacy in the vehicle that his girlfriend, Ms. Taylor, had rented from Hertz and was being driven by Amanda Paige Lang, who was not listed as an authorized driver on the rental application;

---

[4]     The Court resolved this choice-of-law dispute in the context of denying Defendant's motion seeking a transfer of the case to the Eastern District of Michigan. (*See* Docket No. 41).

- that law enforcement had probable cause to conduct the search of the vehicle to investigate drug activity given Ms. Lang's apparent marijuana use and the smell of marijuana; and,

- that the search of the vehicle was constitutionally valid under the automobile and inventory exceptions to the Fourth Amendment.

*Id.* Further, Defendant argued that he should have been permitted to contact Ms. Taylor to retrieve the vehicle rather than have it searched, towed, impounded and returned to Hertz. *Id.* at *15. Ultimately, after considering the totality of the circumstances, all of the facts of record and assessing the credibility of the testifying witnesses, Officer Salamas, Ms. Taylor and Defendant, the Court denied Defendant's motion to suppress in a comprehensive Memorandum Opinion resolving the parties' disputes on all of the above legal issues. *Id.* at *7-18. Given this disposition, the Court refused to exclude the challenged evidence at trial, i.e., bags containing electronics stolen from the AT&T Wireless retail store; a firearm; an Ohio toll receipt; clothing worn by Defendant; and a telephone possessed by Ms. Lang, along with its phone number. *Id.* Defendant was then convicted at trial on all three counts against him related to his armed robbery of the AT&T Wireless retail store in Greentree, Pennsylvania. (Docket No. 107).

A. *Circumstances Surrounding Brittany Taylor's Testimony*

Returning to the July 2014 suppression hearing, Ms. Taylor was called to testify as a defense witness. (Docket No. 79). The portions of her testimony[5] relevant to the present inquiry largely consisted of: the Defendant's and her general background information; their relationship; her rental of the vehicle and Defendant's involvement or lack thereof in the rental process; her authorization of Ms. Lang to utilize the vehicle to drive Defendant around on November 26, 2012 and the scope of that authorization which she did not limit to in-state travel; the fact that

---

[5] The Court again notes that a more detailed summary of Ms. Taylor's testimony is set forth in the Memorandum Opinion denying Defendant's motion to suppress evidence. (*See* Docket No. 84).

she had left her cellular phone in the rental car on the day in question; her knowledge of Defendant's whereabouts on that date including that Ms. Lang picked him up early in the day and she did not see him again due to his arrest; and her attempts to contact Defendant throughout the day, all of which were unsuccessful.  (*Id.* at 80-86; 91-96; 99-101; 103-04).

On May 1, 2015, many months after the suppression hearing and the jury's verdict against Defendant, Deputy Walker and Special Agent Fidler testified that they observed Defendant's behavior during Ms. Taylor's testimony, explaining that he appeared to be "emphatically" nodding his head in an effort to signal to her when she should answer "yes" or "no" in response to questioning by the prosecutor.  (Docket No. 133 at 6-9, 12, 14-15).  They testified consistently and appeared generally credible but each admitted that they did not bring Defendant's behavior to the attention of the Court, or the two law clerks while the proceeding was ongoing.  (*Id.* at 10, 12, 16). Rather, both testified that they informed the prosecutor at the conclusion of the proceeding but no record was made of these reports.  (*Id.* at 8, 15-17). Deputy Walker admitted that he did not have a clear view of Defendant's face from where he was seated in the courtroom but could only see the side and back of his head.  (*Id.* at 11).  Special Agent Fidler conceded that at times his view of Defendant was obstructed by defense counsel.  (*Id.* at 14).  Ms. Taylor was not questioned about Defendant's behavior during the July 2014 hearing by the attorneys or the Court.  (Docket No. 79 at 80-107).  In addition, the Government has not presented any evidence that Ms. Taylor actually saw Defendant's movements and/or was influenced by these activities.  The record is also not developed as to whether she had a clear view of Defendant from the witness stand or if her view would have been obstructed by the attorneys standing at the podium while questioning witnesses.  (*See* Docket No. 133).

Defendant testified at the later May 1, 2015 hearing that he likely engaged in movements similar to those described by the law enforcement officers during Ms. Taylor's suppression hearing testimony but further stated that he was simply reacting in frustration to the lines of questioning by the prosecutor with which he disagreed and also denied that he was signaling to Ms. Taylor and/or attempting to influence her testimony. (*Id.* at 19-21, 23-25). Defendant further explained that he is generally animated while speaking and added that he has been active in his defense, interrupting defense counsel numerous times during proceedings, (*id.* at 21-26), statements which the Court notes are corroborated by the record and its own observations of Defendant throughout his many appearances in Court. (*See* Docket No. 79 at 28; 56; 61; 62; 64; 80; 151). Defendant claimed that he saw Agent Fidler "plop up" during the proceeding and overheard him tell another individual present in the courtroom that Defendant was trying to influence Ms. Taylor's testimony. (Docket No. 133 at 23, 27-28). Finally, the suppression hearing transcript reflects that Defendant's actions did not prompt the Court or its staff to reprimand Defendant during the hearing or at any breaks in the proceedings. (*See* Docket No. 79).

### B. *Truthfulness of Defendant's Testimony at the Suppression Hearing*

Defendant was called as the last witness at the July 2014 suppression hearing, voluntarily took the oath and proceeded to testify. (Docket No. 79). Like his girlfriend, Defendant explained: his background and their relationship; his involvement (or lack thereof) in the rental of the vehicle; and, a payment he made to Ms. Taylor which she forwarded to satisfy Hertz's invoice for the vehicle rental. (*Id.* at 107, 140-41). Defendant also testified as to the circumstances surrounding the traffic stop; his interactions with law enforcement officers at the

scene and observations of their interactions with Ms. Lang; his arrest on outstanding warrants; and transport to Monroe County Jail. (*Id.* at 108-129).

More pertinent to the instant dispute, the Court held in its suppression decision that Defendant's testimony concerning his whereabouts and activities prior to the traffic stop on November 26, 2012 was not credible, citing the facts that he refused to identify the names of individuals he claimed he was with and the lack of specificity of the locations where he was at various times. *See Kennedy*, 2014 WL 6090409, at *n.9. Defendant testified as to all of the following concerning his whereabouts and activities on November 26, 2012:

> • that he was dropped off at a friend's house in Monroe City by another friend (not Ms. Lang) right before 10:00 p.m., (Docket No. 79 at 130, 134-35);
> • that Ms. Lang picked him up at the friend's house in Monroe City around 10:30 or 11:00 p.m. and they were travelling to his home in Inkster when they were stopped by the Officer Salamas, (Docket No. 79 at 109-10, 130, 134-35, 144);
> • that he spent the day hanging with his friend Termaine in Michigan, (*id.* at 147-48);
> • that he was not in Ohio on that day, (Docket No. 79 at 121);
> • that he was not with Ms. Lang earlier in the day (Docket No. 79 at 135, 138); and,
> • that he purchased the stolen electronic devices located in the trunk of the car in exchange for cash from another individual in Monroe City, who was in a separate car from him and Ms. Lang, (Docket No. 79 at 123-24, 141-43).

*C. Relevant Trial Evidence*

Ms. Lang testified as a Government witness at the December 2014 trial. (Docket No. 125 at 26-27). Like the jury, the Court found her testimony to be credible. Ms. Lang explained that Defendant picked her up on the morning of November 26, 2012 and she proceeded to drive him from the Detroit area to the Pittsburgh area. (*Id.* at 30-31). She told the jury that Defendant informed her that the purpose of their travel was to meet someone that owed him money and that

she did not know where she was going. (*Id.* at 30-32). She also explained how she was instructed by Defendant to park the car in an adjacent lot near the Greentree AT&T Wireless retail store and she did. (*Id.* at 32). Ms. Lang then waited while Defendant left the car for around three hours. (*Id.* at 36, 52). Defendant called her and told her to pop the trunk of the car and she did. (*Id.*). When Defendant returned, he had the bags that were later confiscated by police, threw them in the trunk of the vehicle and hopped into the backseat. (*Id.* at 52-54, 65). He was also wearing a gray sweat suit that he did not have on when she picked him up that morning. (*Id.* at 35, 50-51). Ms. Lang continued that Defendant directed her to drive back to Detroit and she did, only to be pulled over by Officer Salamas in South Rockwood, Michigan, which led to both of their arrests. (*Id.* at 37-39, 53, 65). While Ms. Lang remained in her car throughout the robbery and did not observe its occurrence, she testified that the still photograph taken by the surveillance camera at the store showed an individual wearing the same gray sweat suit as the one that Defendant was wearing. (*Id.* at 35; Ex. J-5). She also believed he had a mask akin to the one worn by the individual in that photo. (Docket No. 125 at 38; Ex. J-5).

Ms. Lang's version of events was corroborated by the cell phone location data generated by the two cellular phones which were in the Chevy Aveo (her phone and Ms. Taylor's) and the expert testimony of ATF Special Agent Stan Brue[6] interpreting and explaining same. (*See* Govt. Exs. J-1; J-2; J-3; Docket No. 125 at 151-52, 212-226). Agent Brue testified that, based on the locations of the cell phones, Ms. Lang and Defendant were in the metro Detroit area around 10:00 a.m. on November 26, 2012. (Docket No. 125 at 213:22-25, 214:22-215:11). The same data showed that they traveled on the Ohio Turnpike through Ohio, (*id.* at 217), and were in the Pittsburgh area between 4:30 p.m. and 7:46 p.m., (*id.* at 218:23-219:3). Agent Brue explained

---

[6]     Defendant raised no objections to Special Agent Brue's qualifications as an expert in cell phone technology and he was accepted by the Court as such an expert based on his years of experience and training in this field. (Docket No. 125 at 208-209).

that the cell phones were "absolutely" connecting with cell towers surrounding the area of the Greentree AT&T Wireless retail store in that timeframe. (*Id.* at 221). The data then showed that Ms. Lang and Defendant returned to Michigan, traveling along the Ohio turnpike once again, (*id.* at 221-225), and arriving back in the South Rockwood area at 11:40 p.m., (*id.* at 225:2-6). These movements between the Detroit and Pittsburgh areas were reflected on the Government's trial exhibits plotting the location data on a series of maps. (Exs. J-1:J-3).

Defendant did not testify at trial, electing to exercise his Constitutional rights to remain silent and to not present any evidence in his defense.[7] (Docket No. 126 at 3-8). At this juncture, he has not offered any additional evidence to corroborate his earlier testimony concerning his whereabouts on November 26, 2012 or his supposed acquisition of the electronics from a friend in Monroe City, Michigan. (Docket Nos. 120, 127, 141). Instead, he maintains that the Government has not met its burden of proof. (*Id.*).

## III. LEGAL STANDARD

The Court is tasked with weighing the credibility of the evidence presented by the parties at sentencing. *United States v. Perez*, 386 F. App'x 301, 304 (3d Cir. 2010) (citations omitted). The resolution of factual disputes is governed by the preponderance of the evidence standard. *See United States v. Fisher*, 502 F.3d 293, 304-05 (3d Cir. 2007); *see also* U.S.S.G § 6A1.3, comm. n. ("use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of guidelines to the facts of a case."). Further, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its

---

[7] The Court conducted a colloquy with Defendant on the record which plainly indicates that he exercised his right to not testify knowingly and voluntarily. (Docket No. 126 at 3-7).

admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

IV. DISCUSSION

It is the Government's burden to prove the applicability of the enhancement under Guideline § 3C1.1 by a preponderance of the evidence. *United States v. Helbling*, 209 F.3d 226, 250 (3d Cir. 2000) (citing *United States v. Belletiere*, 971 F.2d 961, 965 (3d Cir. 1992)). Guideline § 3C1.1 provides that:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The commentary notes explain that "[t]his adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant." *Id.* at n.1. The Guidelines suggest a non-exhaustive list of the types of conduct covered by this provision which may include: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so"; "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction"; and "providing materially false information to a judge or magistrate judge." *Id.* at n.4(A), (B), and (F). The commentary further advises that materially false information is "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." *Id.* at n.6.

The Government seeks to prove a single § 3C1.1 enhancement of two-levels under alternative theories such that adequate proof under either theory will result in its application. (*See* Docket Nos. 122, 139). The Court now turns to its evaluation of the sufficiency of the evidence to prove the contested enhancement under both proffered theories.

## A. Attempt to Influence Taylor's Testimony

The Government argues initially that the enhancement is properly assessed due to Defendant's alleged attempt to influence Ms. Taylor's testimony at the suppression hearing by signaling to her whether to answer "yes" or "no" to questions during her testimony in open court. (Docket Nos. 122, 139). Defendant maintains that he did not act with the requisite intent, pointing to his own testimony at the May 1 enhancement hearing and the facts that his actions were neither observed by the Court nor reported to the Court by the law enforcement officers who testified that they observed this alleged offending behavior. (Docket Nos. 120, 127, 141). The Court agrees with Defendant's position on this issue.

To prove an attempt in this context, it is the Government's burden to show that Defendant willfully took a "substantial step" toward obstructing justice with the specific intent to unlawfully influence Ms. Taylor's testimony. *See United States v. Manzo*, 636 F.3d 56, 66 (3d Cir. 2011) (quoting *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) ("An attempt conviction 'requires evidence that [the defendant] (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as he believe[s] them to be, constitute[s] a substantial step in the commission of the crime.'")).

> "Willful[ly]" implies a specific intent to obstruct justice. *United States v. Hernandez*, 83 F.3d 582, 585 (2d Cir. 1996). In determining whether the defendant acted willfully, the district court is entitled to rely on circumstantial evidence and to draw all reasonable inferences from the facts. *United States v. Cassiliano*, 137 F.3d 742, 746 (2d Cir. 1998).

*United States v. Hertzog*, 186 F. App'x 314, 318 (3d Cir. 2006).

The Government has not cited any specific decisions applying the enhancement in a situation akin to the present circumstances where it is alleged that a defendant's actions in open court attempted to influence another's testimony. (Docket Nos. 122, 139). The Court's independent research reveals that the enhancement has been assessed in several potentially related scenarios, including:

- defendants who made cutthroat gestures toward witnesses, *see e.g., United States v. Mathis*, 331 F. App'x 997, 1000 (3d Cir. 2009), *United States v. Moss*, 138 F.3d 742 (8th Cir. 1998);

- a defendant who engaged in heated conversations with witnesses and stated or implied that "their recollections of events connected to the case were wrong," *United States v. Munchak*, 527 F. App'x. 191 (3d Cir. 2013);

- a defendant who was captured on recorded jail calls to his relatives and co-defendants attempting to persuade them to forward a letter to another codefendant and dissuade this individual from testifying against him, *United States v. Williams*, 591 F. App'x 78, 96 (3d Cir. 2014);

- a defendant who had his daughter send an email to possible witnesses informing them that some members of a group were undercover officers and that the circumstances surrounding his arrest were falsely reported in the media, *Herzog*, 186 F. App'x at 318;

- a defendant spoke to a witness telling this individual that it would be best that the witness not testify against him, *United States v. Irby*, 240 F.3d 597 (7th Cir. 2001); and,

- a defendant who called his wife (a prospective witness) and told her to throw his stuff away, with the court interpreting "stuff" as referring to contraband underlying the charges, *United States v. Almeida*, 748 F.3d 41 (1st Cir. 2014).

Notably, most of these cases involved a direct communication between the defendant and the prospective witness. In another case, the United States Court of Appeals for the Sixth Circuit

vacated and remanded the District Court's finding that the enhancement applied based on reports of misbehavior that the Court received from Deputy Marshals that the defendants were "looking threateningly" at witnesses during proceedings. *See United States v. Range*, 982 F.2d 196, 198 (6th Cir. 1992). The Sixth Circuit did not conclusively hold that such facts could never support the enhancement; rather, the Court of Appeals ruled that the record was not sufficiently developed to review the matter, primarily because the District Court did not differentiate between the conduct of the two defendants. *Id.* Hence, a remand was ordered for further development of the record. *Id.*

In this Court's opinion, the facts presented do not suffice to prove (directly or circumstantially) that it was more likely than not that Defendant willfully attempted to influence Ms. Taylor's testimony during the suppression hearing. *See* U.S.S.G. § 3C1.1. Simply put, the record evidence is too equivocal as to the nature and severity (or non-severity) of Defendant's behavior for the Court to find that it was more likely than not that Defendant took a substantial step toward influencing her testimony by "emphatically" nodding his head upon the questioning by the prosecutor. *See United States v. Humphries*, 2004 WL 2743432, at *4 (E.D. Pa. Nov. 29, 2004) (noting that equivocal evidence was insufficient proof to meet preponderance of the evidence standard). Defendant admitted that he occasionally reacts to questioning by attorneys that he disagrees with but denied that he did so to the degree stated by the law enforcement officers or that he was trying to influence Ms. Taylor's testimony. (Docket No. 133 at 19-21, 23-25). Defendant also explained that he interrupted his attorney multiple times to speak to him for the purpose of providing him with information during the proceeding, facts which are fully borne out in the Court's record as there were at least seven times that the Court paused the proceedings

to permit Defendant to confer with his counsel.  (*See* Docket No. 79 at 28; 56; 61; 62; 64; 80; 151).

Beyond these partial admissions by Defendant, the only attendees at the proceeding who apparently observed his "emphatically" nodding his head in response to "nearly every single question" posed were the two law enforcement officers.  (Docket No. 133 at 6-9, 12, 14-15).  But, their testimony was presented many months later and they admitted that their observations were not contemporaneously reported to the Court or its staff, all of whom could have (and would have) intervened.  (*Id.* at 10, 12, 16).  There was a clear opportunity to do so as the Court took a 25 minute break during the suppression hearing after Ms. Taylor testified.  (Docket No. 79 at 131).  While the officers' testimony was consistent, their perspectives were from locations behind where Defendant was seated such that they could not directly see his facial expressions and they offered no testimony concerning whether his non-verbal communications were actually seen by Ms. Taylor or if she could have seen these activities.  (Docket No. 133 at 10-11, 14-15).  There is also nothing in the record which independently suggests that the questioning attorneys or the Court observed any contemporaneous reactions by Ms. Taylor in response to Defendant's antics.  (*See* Docket No. 79 at 79-107).  That Ms. Taylor may not have observed his behavior is important because there is no record regarding where the attorneys were positioned in the courtroom when questioning witnesses.  (*See* Docket Nos. 79, 133).  Insofar as the podium in the middle of the courtroom was utilized, it would have obstructed the view between the witness on the stand and Defendant seated at counsel table, making it more difficult for any such "emphatic" nodding to have actually influenced her testimony.  *See* n.3.  The computer screen sitting on counsel table could have provided yet another impediment but no record was developed to establish where it was located as well.  *Id.*

Had a contemporaneous report of Defendant's behavior been made, there would have been more than sufficient time for Ms. Taylor to be recalled as a witness as she remained in the courtroom. (*See* Docket No. 79). This would have permitted the parties to develop a record as to the disputed facts concerning Defendant's behavior and also to probe whether they had any communications prior to the hearing about the suppression motion which may have been relevant to Defendant's intent. Again, Ms. Taylor and Defendant were engaged at the time of her testimony and had been in a relationship for many years. It would be expected that there would have been in-person meetings, jail calls and letters or other correspondence between them but neither Defendant nor Ms. Taylor were questioned about these contacts. (*See* Docket Nos. 79, 133). Nor were any documentary evidence or jail recordings presented. (*Id.*). Finally, Defendant himself testified immediately after his girlfriend and his behavior during her testimony was never raised, despite the lengthy break which was taken in the middle of his testimony. (Docket No. 79 at 131).

For these reasons, the Court holds that the Government has not met its burden to establish that Defendant willfully attempted to influence Ms. Taylor's testimony through his alleged non-verbal communications at the suppression hearing. *See* U.S.S.G. § 3C1.1.

### B. Perjury

The Government continues that the evidence presented at trial demonstrates that Defendant committed perjury during the suppression hearing, testifying falsely concerning his whereabouts and activities on the date of the robbery. (Docket Nos. 122, 139). Defendant denies that he testified falsely. (Docket Nos. 120, 127, 141). Alternatively, he argues that even if his testimony on these points was false; this evidence was not material to the issues before the Court on the suppression motion. (*Id.*). Having fully evaluated these disputes, the Court holds

that the Government has met its burden to demonstrate that Defendant testified falsely concerning material matters at the suppression hearing. Hence, the enhancement must be imposed. *See United States v. Napolitan*, 762 F.3d 297, 315 (3d Cir. 2014).

The enhancement under Guideline § 3C1.1 applies if the evidence demonstrates that Defendant "[gave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Perjury consists of four elements: (1) a false statement; (2) given under oath; (3) made willfully; (4) that concerns a material matter. 18 U.S.C. § 1621; *see also United States v. Moskovits*, 86 F.3d 1303, 1311 (3d Cir. 1996). If the record reveals that each of these elements has been satisfied, the enhancement under § 3C1.1 must be assessed by the Court. *See Napolitan*, 762 F.3d at 315 (citing *Dunnigan*, 507 U.S. at 98) ("If the record also provides support for findings that a false statement was material and willful, the enhancement must be applied."). The Court of Appeals has instructed that "the District Court must make a finding as to whether the Government has met its burden of proving by a preponderance of the evidence that the defendant perjured himself. The District Court must either make findings to support all the elements of a perjury violation, or clearly express which elements it believes have not been proven." *Napolitan*, 762 F.3d at 315. Here, the Court holds that the Government has met its burden and now provides its findings as to each element, as required.

There is no dispute that Defendant was sworn prior to his testimony and the same is clearly indicated on the record.[8] (Docket No. 79 at 107 ("BRANDON KENNEDY, a witness having been duly sworn, testified as follows:")). As such, the Court focuses on the sufficiency of the evidence on the other elements of perjury.

---

[8] The oath utilized by this Court is: Do you solemnly, sincerely, and truly declare and affirm, under penalty of perjury, that the evidence you shall give to the Court in the cause now trying, is the truth, the whole truth and nothing but the truth and this you declare and affirm?

In this Court's opinion, the record plainly demonstrates that Defendant testified falsely concerning his whereabouts and activities prior to the traffic stop on the date of the robbery and how he obtained the electronics which were stolen from the AT&T Wireless store. As noted above, the Court made adverse credibility findings concerning Defendant's suppression hearing testimony in its decision denying his motion to suppress. *See Kennedy*, 2014 WL 6090409 at 4-5, n.8 ("The Court does not find Defendant's testimony credible, as he refused to identify last names and would not provide specific locations to account for his whereabouts"). The Court reached this conclusion after observing Defendant's demeanor on the witness stand and carefully assessing his lack of credibility given the other evidence presented at the suppression hearing, which at the time was limited to the testimony of Officer Salamas and Ms. Taylor as well as a few exhibits.[9]

The credible evidence later presented by the Government at trial, (including the testimony of Ms. Lang and Special Agent Brue, who interpreted the cellular phone data), completely undermines Defendant's earlier statements that he: spent the day hanging around with Termaine in Michigan, (Docket No. 79 at 147-48); had been visiting a friend in Monroe City and was dropped off there around 10:00 p.m., (*id.* at 130, 134-35); did not meet up with Ms. Lang until she picked him up around 10:30 or 11:00 p.m. and was not with her earlier in the day, (*id.* at 109-10, 130, 134-35, 138, 144); was not in Ohio, (*id.* at 121); and had purchased the electronics from another individual in Monroe City, (*id.* at 123-24, 141-43). After further considering Defendant's testimony at the suppression hearing in light of the trial evidence, and the jury's verdict which rejected his defense that he did not travel from Detroit to Pittsburgh on the morning of November 26, 2012 and commit the armed robbery of the Greentree AT&T

---

[9]     The suppression hearing exhibits consisted of: (1) a copy of Mich. Comp. Laws Ann. § 257.628, (Docket No. 75–2); (2) the Hertz Rental Agreement for the White Chevrolet Aveo, (Docket No. 75–3); and (3) the Towing and Vehicle Inventory Policy of South Rockwood, MI Police Department, (Docket No. 75–4).

Wireless retail store, the Court is left with no doubts that Defendant made several false statements during his testimony at the suppression hearing. *See United States v. Yaniro*, 303 F. App'x 100, 103 (3d Cir. 2008) (citing *United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996) ("The court is bound to accept facts that are necessarily implicit in a jury's verdict of guilty.")).

With respect to whether Defendant acted with the requisite intent, the Court of Appeals has held that "[w]illfulness denotes 'an act which is intentional rather than accidental.' In the context of applying § 3C1.1 in a sentencing determination, the evidence must show that the defendant 'intentionally obstructed or attempted to obstruct justice.'" *United States v. Kim*, 27 F.3d 947, 959 (3d Cir. 1994) (citing *Belletiere*, 971 F.2d at 965 (internal quotation marks omitted)). Further, willfulness is not established if the accused gave "inaccurate testimony as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 87-88. Again, willfulness may be established from direct or circumstantial evidence. *See Hertzog*, 186 F. App'x at 318.

Based on the Court's observations of Defendant while testifying, it is more likely than not that his statements were made willfully in regard to these matters. *Id.* He has appeared before the Court multiple times during this case and the Court believes that he communicates well and is articulate. The Court has also engaged in several colloquies with Defendant and found him competent to knowingly and voluntarily waive important Constitutional rights, including, the right to counsel, as he represented himself *pro se*, for a time, (Docket No. 50); and his right to testify in his own defense at trial, (Docket No. 126 at 3-7). At the time of the suppression hearing, he was 26 years old, and a high school graduate with some work experience involving communication skills as a dispatcher. (Docket No. 79 at 145-46). He has no reported physical, mental or emotional infirmities that would affect his memory or his ability recall

matters. (Docket No. 110 at ¶¶ 62-68). The Court further holds that Defendant's testimony was not the product of mistake or confusion because he introduced the subject of his whereabouts on November 26, 2012 into the proceedings during his direct examination, without prompting from his counsel, (Docket No. 79 at 109-10),[10] and then repeated and expanded his false narrative several times, doing so in response to questioning from both the prosecutor and the Court, (*See e.g., id.* at 123-24, 130, 134-35, 138, 141-144, 147-48). Overall, there is no evidence in this record undermining a finding that Defendant's testimony was both willful and deliberately made.

The Court next holds that the evidence suffices to demonstrate that Defendant's testimony on these points was "material" to the disposition of the suppression motion and overrules Defendant's objection to same. As a general matter, the Court of Appeals has held that the obstruction of justice enhancement may be applied against a defendant who committed perjury during a suppression hearing. *See e.g., United States v. Armstrong*, 69 F. App'x 509, 513 (3d Cir. 2003) (applying enhancement based on defendant's false testimony at suppression hearing that he was not warned of his *Miranda* rights prior to making statement to law enforcement that defendant sought to suppress); *United States v. Baynor*, 335 F. App'x 163, 165 (3d Cir. 2009) (applying enhancement due to willfully false suppression hearing testimony by defendant concerning sequence of events during officers' search of residence which led to

---

[10]    On direct, Defendant testified as follows:
Q. [Ms. Lang] had picked you up that day?
A. Yes, she had picked me up.
Q. So when we heard testimony that you weren't at home that day, was that testimony accurate?
A. Yes.
Q. So, Ms. Lang retrieved you. Was she already in the white Chevy automobile?
A. I didn't know she had the automobile until I called Brittney [Taylor]. Brittney told me she had the vehicle because I had needed a ride.
Q. What did you do then?
**A. I called Amanda [Lang], asked Amanda could she come pick me up that evening. That wasn't earlier in the day, it was that evening.**
Q. Had she picked you up?
A. Yes.
(Docket No. 79 at 109 (emphasis added)).

seizure of contraband he sought to suppress); *United States v. Oppong*, 256 F. App'x 469, 472-73 (3d Cir. 2007) (applying enhancement based on defendant's false testimony at suppression hearing and trial denying that he was involved in criminal conduct.). In light of such precedent, Defendant's position is overruled to the extent that he maintains that his statements were not capable of supporting the enhancement.

The crux of Defendant's argument on materiality is that the information he testified about at the suppression hearing was neither relevant nor material to the disposition of the suppression motion because his whereabouts and acquisition of the electronics were issues that were litigated at trial and had no bearing on whether his Fourth Amendment rights were violated during the traffic stop in South Rockwood, Michigan or his legal standing to assert such Constitutional rights in these proceedings. (Docket Nos. 120, 127, 141). This Court disagrees as its determination of materiality does not require it to have actually relied upon Defendant's testimony but is much broader and involves "evidence, fact, statement, or information that, <u>if believed, would tend to influence or affect the issue under determination</u>." U.S.S.G. § 3C1.1, at n.6 (emphasis added). The Court of Appeals has also held that information affecting a witness's credibility which was "capable of influencing" the factfinder may be enough to constitute perjury. *United States v. Chinnery*, 68 F. App'x 360, 364-65 (3d Cir. 2003).

> Long ago, we held that false statements implicating a witness's credibility are material under the federal perjury statute. *United States v. Weiler*, 143 F.2d 204, 205–06 (3d Cir. 1944), *rev'd on other grounds*, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945). In *Weiler*, we explained that materiality considers whether, in light of the trial as a whole, the false statement "was capable of influencing the tribunal on the issue before it." *Id.* at 206 (quoting *Blackmon v. United States*, 108 F.2d 572, 573 (5th Cir.1940)). Therefore, the false statement might be material when "calculated and intended to prop and bolster the testimony of the witness on some material point," by "clothing it with circumstances which ... strengthen the credibility of the witness."

*Id.* at 364-65.

The Court understands that "[n]ot every false statement by a witness satisfies perjury's materiality requirement" and that "'certain lies on cross-examination might be too trivial to count as being relevant to the question of credibility.'" *United States v. Knight*, No. 1:09-CR-00005, 2011 WL 703924, at *10 (D.V.I. Feb. 18, 2011), *aff'd*, 700 F.3d 59 (3d Cir. 2012) (quoting *United States v. Akram*, 152 F.3d 698, 702 (7th Cir. 1998)). But, credibility is a central issue in suppression proceedings – which may be case dispositive if critical prosecution evidence is excluded. *See United States v. Bundy*, 392 F.3d 641, 648 (4th Cir. 2004) (noting that suppression rulings may be case-dispositive). Witness credibility also becomes much more important in cases such as this one where the record contains disputed facts provided by conflicting witnesses presented by the parties. *See Knight*, 2011 WL 703924, at *10 ("when the credibility of a witness is a paramount concern for the fact-finder—such as in a he said, she said case—false statements by that witness are more likely to be material. This is particularly true at a suppression hearing, where the credibility of witnesses is often a crucial, if not dispositive issue for the Court.") (internal quotation omitted).

Here, Defendant's statements that he remained in Michigan on November 26, 2012, and had purchased the electronics from another individual, if credited, provided an alibi to the three charges in this case alleging that he committed an armed robbery and firearms offenses in the Western District of Pennsylvania on that date. *See United States v. Simon*, 995 F.2d 1236, 1243 (3d Cir. 1993) (holding that it is not defendant's burden to prove an alibi as a defendant "need only raise a reasonable doubt in the jurors' minds as to whether he was present at the scene of the charged offense at the time the offense was committed"). This type of testimony is certainly central to the trial issues as it may have established a complete defense to the charges. But, if

believed, such testimony could have also bolstered Defendant's credibility to such a degree on the numerous disputed suppression issues that it may have influenced the Court to suppress the challenged evidence. *See Oppong*, 256 F. App'x at 472 (upholding District Judge's finding that defendant's suppression hearing testimony was "a construct intentionally devised to attempt to fit a theory of innocence around incontrovertible documentary records."); *see also Chinnery*, 68 F. App'x at 364-65. Hence, the Court believes that Defendant's false alibi testimony, if credited, was capable of influencing the Court in making its decision on the then-pending suppression motion. *Id.*

In this regard, the disputed Fourth Amendment issues were broad in scope as Defendant challenged the constitutionality of the traffic stop, search of the vehicle and seizure of evidence therefrom. *See Kennedy*, 2014 WL 6090409 at *4-6. The Government countered raising several legal arguments justifying the actions taken by law enforcement including that: the traffic stop was supported by reasonable suspicion of a traffic violation; Defendant lacked standing to challenge the search; and that the search was otherwise supported by probable cause of drug activity by the driver and independently authorized under the automobile and inventory exceptions to the Fourth Amendment. *Id.* Defendant also persuaded the Court to evaluate these issues with reference to Sixth Circuit and Michigan law to the extent that they conflicted with Third Circuit law because the traffic stop and search occurred within those jurisdictions and his repeated advocacy that he was entitled to a broader array of Fourth Amendment rights under their respective precedents. *Id.* Within this legal framework, the Court was tasked with considering the totality of the circumstances and to weigh the credibility of the evidence. *Id.* at *8-15.

There were many factual discrepancies between the suppression hearing testimony of Defendant and Officer Salamas, who were the only individuals called as witnesses who were also present at the traffic stop. (*See* Docket No. 79). Officer Salamas provided lengthy testimony detailing his version of what occurred from the stop of the vehicle through the arrests of its occupants. (*Id.* at 9-79). Defendant also offered extensive testimony about all of his and Ms. Lang's interactions with Officer Salamas and the responding border patrol officers. (*Id.* at 107-149). Their testimony conflicted in many respects such as: whether the car was speeding; how Officer Salamas approached the vehicle; whether there was a marijuana smell emanating from the vehicle; what was said between them; what Defendant was wearing; and, how the search was conducted. The Court rejected much of Defendant's testimony, explicitly holding that "[b]ased on Officer Salamas' earnest demeanor and his answers to counsel's and the Court's questioning at the suppression hearing, in this Court's estimation, he offered a convincing version of the events that unfolded on the date in question. To the extent that Mr. Kennedy's and Ms. Taylor's testimony contradicted Officer Salamas', the Court finds the officer's testimony to be more credible." *Kennedy*, 2014 WL 6090409, at *1.

In total, the Court finds that this credibility evaluation was a critical aspect of its decision on the suppression motion and that Defendant's false alibi narrative, if believed, was capable of influencing that decision. *See also Chinnery*, 68 F. App'x at 364-65. Therefore, as all of the elements of perjury have been satisfied, the enhancement under Guideline § 3C1.1 must be applied. *See Napolitan*, 762 F.3d at 315. To be clear, the Court recognizes that Defendant maintained the absolute right to testify at the suppression hearing but such right does not authorize him to commit perjury while so testifying as he did here. *See United States v. Slane*, Crim. No. 11-81, 2015 WL 728481, at *27 (W.D. Pa. Feb. 19, 2015) ("While Defendant retained

the absolute right to testify in her defense, no one has the right to take the sworn oath to tell the truth and then testify falsely in the manner that she did at trial."); *see also Dunningan*, 507 U.S. at 1117 ("a defendant's right to testify does not include a right to commit perjury.").

## V.  CONCLUSION

Based on the foregoing, the Court holds that the two-level enhancement under Guideline § 3C1.1 is appropriately applied in this case as the record demonstrates by a preponderance of the evidence that Defendant committed perjury during his suppression hearing testimony. Defendant's objection to same is overruled.  The Court's Tentative Findings and Rulings will separately issue and this matter will be set for sentencing.

*/s Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date:   September 24, 2015

cc/ecf:  All counsel of record.

Brandon Kennedy c/o Brian Aston, Esquire