IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 13-240 |
| ) | Judge Nora Barry Fischer |
| BRANDON KENNEDY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

I. INTRODUCTION

Presently before the Court are a counseled motion to reduce sentence under 18 U.S.C. § 3582(c) filed by Defendant Brandon Kennedy, (Docket No. 209), and the Government's opposition thereto, (Docket No. 211). Defendant seeks to reduce the 155-month sentence imposed by this Court to time served based on the retroactive changes to the assessment of status points set forth in Amendment 821 to the U.S. Sentencing Guidelines, the application of which would reduce his criminal history category and the advisory guidelines range in his case. (Docket Nos. 209; 215; 217). While the Government concedes that Defendant is eligible for a reduction, it maintains that the Court should deny the requested relief after considering the relevant § 3553(a) factors. (Docket Nos. 211; 219). After careful consideration of the parties' submissions and for the following reasons, Defendant's Motion [209] is denied, as the Court declines to exercise its discretion to reduce Defendant's sentence.

II. BACKGROUND

On September 10, 2013, a federal grand jury returned an Indictment charging Defendant with committing three offenses related to his November 26, 2012 armed robbery of an AT&T

Wireless retail store in Greentree, Pennsylvania.[1] (Docket No. 1). Specifically, Defendant was charged with all of the following: at Count 1, Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); at Count 2, Using and Carrying a Firearm During and In Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and, at Count 3, Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1).

There was extensive pretrial litigation in this case and the Court issued several decisions including: a Memorandum Order denying Defendant's motion to transfer the case to the Eastern District of Michigan where the traffic stop leading to his arrest occurred, (Docket No. 41); a Memorandum Order denying his motion to dismiss the Indictment based on alleged prosecutorial misconduct before the grand jury, (Docket No. 57); and a Memorandum Opinion denying his motion to suppress evidence seized during the traffic stop including a bag filled with Apple products and a firearm, *see United States v. Kennedy*, Crim. No. 13-240, 2014 WL 6090409 (W.D. Pa. Nov. 13, 2014); (Docket No. 84). The case then proceeded to a jury trial, at the conclusion of which on December 18, 2014, Defendant was found guilty of all three counts against him in the Indictment. (Docket No. 107).

During the sentencing phase, the Court held an evidentiary hearing on the parties' disputed application of the enhancement under Guideline § 3C1.1 for obstruction of justice, and accepted briefing from the parties. (*See* Docket No. 143). On September 24, 2015, the Court issued a Memorandum Opinion resolving the dispute in favor of the Government and finding that Defendant committed perjury during his suppression hearing testimony. (Docket No. 143). The

---

[1] The Court notes that a lengthy exposition of the factual background of the offenses and the Government's evidence is not recounted herein as it is set forth in the various opinions written on this matter by this Court and the Court of Appeals. *See e.g., United States v. Kennedy*, 720 F. App'x 104 (3d Cir. 2017) (affirming conviction and sentence); 2014 WL 1758136 (W.D. Pa. May 1, 2014) (denying motion to dismiss); Docket No. 41 (denying motion to transfer); 2014 WL 6090409 (W.D. Pa. Nov. 13, 2014) (denying motion to suppress evidence); Docket No. 143 (holding that enhancement under Guideline § 3C1.1 applied due to Defendant's perjury at the suppression hearing).

Court also determined in its October 8, 2015 Tentative Findings and Rulings that the advisory guidelines range at Counts 1 and 3 was 57 to 71 months based on a total offense level of 24 and criminal history category of II and that he was also subject to a mandatory, consecutive penalty of 84 months at Count 2, making the total advisory guidelines range 141 to 155 months' incarceration. (Docket No. 144). Defendant's subtotal criminal history score was one due to his prior conviction for fleeing police and child abuse for which he was sentenced to 18 months' probation on October 17, 2012 and he was assessed two status points under Guideline § 4A1.1(d) because he committed the instant offenses while serving that term of probation. (Docket No. 110 at ¶¶ 41, 44, 45). Given same, his criminal history score of three resulted in a criminal history category of II. (*Id*.).

At the sentencing hearing, the Court denied Defendant's motion for a variance from the advisory guidelines range after carefully considering all of the § 3553(a) factors. (Docket No. 163 at 35-44). Relevant here, the Court rejected Defendant's position that his youthful age, difficult upbringing, lack of significant criminal history and family ties and responsibilities warranted a variance. (*Id*.). The Court found a number of aggravating factors supporting a sentence of 155 months, including, among others:

- the severity of his offense conduct in committing an armed robbery of the AT&T store with a stolen firearm;

- the harm to the two victims who were held up at gunpoint and suffered fear, trepidation and anxiety as a result;

- he traveled from Michigan to commit the crime in this area and specifically targeted Apple products with greater resale potential;

- he committed the offenses a little more than a month after he was put on probation for fleeing police and child abuse convictions which had done little to dissuade him from engaging in such severe criminal conduct;

3

- his lack of post-offense rehabilitation or remorse as he had committed perjury at the suppression hearing, called the main witness against him a liar at the sentencing hearing and continued to make false claims against the prosecutor throughout the proceedings; and,

- to protect the public from further crimes of Defendant, to specifically deter him from committing further crimes and to deter others from engaging in such behavior.

(*Id*.). The Court noted that the sentence was sufficient, but not greater than necessary to meet all the goals of sentencing and that the same sentence of 155 months would be imposed "if the guidelines had not been accurately computed." (*Id*. at 48-49). The Court's judgment reflected that Defendant was sentenced to a total term of 155 months' incarceration, consisting of concurrent terms of 71 months at each of Counts 1 and 3 and a mandatory, consecutive penalty of 84 months at Count 2, followed by 3 years' supervised release. (Docket Nos. 154; 155). The Court also ordered Defendant to pay a $300 special assessment and forfeit any interest in the firearm involved in the offenses. (*Id*.). A fine was waived given Defendant's inability to pay. (*Id*.).

Defendant timely appealed the judgment to the Court of Appeals. (Docket No. 154). The Court of Appeals affirmed Defendant's convictions and sentence in an Opinion and Judgment dated December 18, 2017 and issued its Mandate on January 8, 2018. *See United States v. Kennedy*, 720 F. App'x 104 (3d Cir. 2017); (Docket Nos. 170; 171). Defendant's petition for writ of certiorari to the Supreme Court of the United States was denied on April 23, 2018. *See Kennedy v. United States*, 138 S.Ct. 1601 (Apr. 23, 2018). He next filed a § 2255 Motion claiming that he was provided ineffective assistance of counsel, among other things. The Court issued a Memorandum Opinion denying relief. *See United States v. Kennedy*, Crim. No. 13-240, 2018 WL 6831145 (W.D. Pa. Dec. 28, 2018). He sought to appeal that decision as well but the

Court of Appeals denied his request for a certificate of appealability. *See United States v. Kennedy*, Appeal No. 19-1591, 2019 WL 4316867, at *1 (3d Cir. Sept. 9, 2019).

Like many other individuals who were incarcerated during the COVID-19 pandemic, Defendant filed a motion for compassionate release in the fall of 2020. (Docket No. 194). After accepting briefing from the parties, the Court issued a Memorandum Order on January 15, 2021 finding that he had failed to demonstrate extraordinary and compelling reasons for release based on the general risks posed by the COVID-19 pandemic, his age of 32 at the time and medical conditions (mild anemia and a rectal prolapse) which were not listed by the CDC as presenting a severe risk of complications if he contracted COVID-19. (Docket No. 207).

The Court also alternatively held that even if he had shown extraordinary and compelling reasons, the sentence of 155 months remained sufficient, but not greater than necessary to meet all the goals of sentencing in this case after revisiting all of the § 3553(a) factors. (Docket No. 207 at 7-8). Among other things, the Court found that the 155-month sentence accounted for the seriousness of the offenses and gravity of the offense conduct given his commission of an armed robbery wherein he threatened two AT&T employees at gunpoint. (*Id.*). The Court noted that Defendant had maintained employment and completed some educational courses while in prison but that he had also committed numerous infractions, including that he had been insolent and verbally disrespectful to prison staff regarding prison lockdown procedures in July of 2020 and circumvented prison staff to make a phone call in August of 2020. (*Id.*). The Court further found that the sentence was "necessary to protect the public from the danger that Defendant presents to the community," due to his violent offenses and "provide[d] general deterrence to others and [promoted] respect for the law" but that reducing the sentence would be inconsistent with the § 3553(a) factors. (*Id.*). He did not appeal this ruling.

Defendant was initially arrested and detained in this matter on September 12, 2013 and has therefore been in custody for a period of 125 months and 25 days. (*See* Docket No. 10). He has served time at various BOP facilities including FCI Loretto and FCI Beckley and was recently transitioned to a halfway house in the Detroit area. (Docket No. 219). The BOP currently reports that his projected release date is November 22, 2024.

On December 19, 2023, CJA counsel was appointed to represent Defendant pursuant to the Administrative Order at Misc. No. 2:23-mc-1227 in order to evaluate whether he qualified for a sentence reduction under Amendment 821 and to bring a motion on his behalf. (Docket No. 208). Thereafter, a counseled motion seeking a sentence reduction was filed and the Court has also received and reviewed the Government's Response, Defendant's counseled Reply, Defendant's pro se Supplement and the Government's Sur-Reply. (Docket Nos. 209; 211; 215; 217; 219). No further briefing has been requested and the Court considers the matter to be fully briefed and ripe for disposition.

### III. LEGAL STANDARD

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is 18 U.S.C. § 3582(c), which provides "an 'exception to the general rule of finality' over sentencing judgments." *United States v. Rodriguez*, 855 F.3d 526, 529 (3d Cir. 2017), *as amended* (May 1, 2017) (quoting *Dillon*, 560 U.S. at 824).

> Section 3582(c)(2) applies to amendments to the Sentencing Guidelines. It provides that a district court may reduce a sentence if two conditions are met: (1) the defendant was sentenced "based on a sentencing range that has subsequently been lowered by the

> Sentencing Commission" and (2) "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*Rodriguez*, 855 F.3d at 529 (quoting 18 U.S.C. § 3582(c)(2)) (further citation omitted). If it is determined that a defendant is eligible for relief under Guideline § 1B1.10, "§ 3852(c)(2) [next] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies […] is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827. "In addition, a district court 'shall consider the nature and seriousness of the danger to any person or the community' and 'may consider post-sentencing conduct of the defendant.'" *Rodriguez*, 855 F.3d at 529 (quoting U.S.S.G. § 1B1.10, cmt. n.1(B)(ii-iii)) (further citation omitted). A defendant does not have a right to an evidentiary hearing in section 3582(c) proceedings as such proceedings "do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3); *see also* Fed. R. Crim. P. 43(b)(4) ("A defendant need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)").

    IV.    DISCUSSION

At the outset, the first step of the Court's analysis is uncontested as the parties do not dispute that Defendant is eligible for a sentence reduction under Amendment 821. (Docket Nos. 209; 211; 215; 219). The Court agrees that Defendant is eligible for a reduction of his sentence at Counts 1 and 3 because Amendment 821 eliminated the assessment of status points for offenders like Defendant who had only one criminal history point at the time of sentencing. *See* U.S.S.G. § 4A1.1(e) (eff. Nov. 1, 2023) ("Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work

7

release, or escape status."). However, Amendment 821 did not reduce the advisory guidelines range for his conviction for using and carrying a firearm in relation to a crime of violence at Count 2 and he remains subject to a mandatory, consecutive penalty of 84 months' incarceration for that offense. *See* U.S.S.G. § 1B1.10(a)(2)(B), cmt. n.1(A).

In this Court's estimation, if Amendment 821 was in effect at the time of Defendant's sentencing, he would have had one criminal history point, placing him in criminal history category I and his offense level would remain unchanged. Based on a total offense level of 24 and a criminal history category of I, Defendant's advisory guidelines range at Counts 1 and 3 would be reduced to 51-63 months' incarceration and the total advisory guidelines range including the mandatory, consecutive penalty at Count 2, would be reduced to 135-147 months' incarceration. *See* U.S.S.G. § 5G1.2(a). The relevant guideline, § 1B1.10(b)(2)(A), contains a limitation that Defendant's sentence may not be reduced "to a term that is less than the minimum of the amended guideline range," U.S.S.G. § 1B1.10(b)(2)(A), such that Defendant's sentence cannot be reduced below 51 months at Counts 1 and 3 and a total of 135 months.

With that background, the Court turns to the second step of its analysis. *See Dillon*, 560 U.S. at 827. Naturally, the parties dispute whether the Court should exercise its discretion to reduce his sentence after consideration of the § 3553(a) factors with the defense advocating a reduction is warranted and the Government countering that any reduction would be inappropriate. (Docket Nos. 209; 211; 215; 219).

Having carefully considered the parties' positions in light of the totality of the circumstances and all of the relevant § 3553(a) factors, the Court believes that the recent amendments under the U.S. Sentencing Guidelines which retroactively eliminated the assessment of two status points in Defendant's case do not outweigh the § 3553(a) factors supporting the

155-month sentence, particularly given the continued threat Defendant poses to public safety and his poor post-sentencing conduct. *See Rodriguez*, 855 F.3d at 532; U.S.S.G. § 1B1.10, cmt. n. 1(B)(ii-iii). As the Court previously held,

> [t]he 155-month sentence […] accounts for the seriousness of the offense and the gravity of the offense conduct, *see* [18 U.S.C.] § 3553(a)(2)(A), as Defendant was convicted of committing an armed robbery during which he threatened two AT&T employees at gunpoint. (Docket No. 110 at 4-6). Additionally, the 155-month sentence is necessary to protect the public from the danger that Defendant presents to the community, thereby making a reduction inconsistent with § 3553(a)(2)(C) and U.S.S.G. § 1B1.13(2). *See also United States v. Williams*, 2020 WL 5362066, at *1 (E.D. Mich. Sept. 8, 2020) ("Defendant's involvement in . . . armed robberies[ is] more than sufficient to establish that Defendant would pose a danger to the community if released[.]"); *United States v. Jamison*, 2020 WL 2776508, at *4 (W.D. Tenn. May 28, 2020) ("Armed robbery, the crime for which [the defendant] was originally convicted . . . is a violent crime that poses a significant danger to the community."). Finally, the 155-month sentence provides general deterrence to others and also promotes respect for the law[.]

(Docket No. 207 at 7-8). The recent amendments to the guidelines likewise do not undermine the numerous aggravating factors which the Court found at sentencing, including:

- the harm to the two victims who were held up at gunpoint and suffered fear, trepidation and anxiety as a result;

- he traveled from Michigan to commit the crime in this area and specifically targeted Apple products with greater resale potential;

- he committed the offenses a little more than a month after he was put on probation for fleeing police and child abuse convictions which had done little to dissuade him from engaging in such severe criminal conduct; [and,]

- his lack of post-offense rehabilitation or remorse as he had committed perjury at the suppression hearing, called the main witness against him a liar at the sentencing hearing and continued to make false claims against the prosecutor throughout the proceedings[.]

(Docket No. 163 at 35-44).  Such aggravating facts continue to support the imposition of a 155-month sentence and counsel against his request for a sentence reduction.

Defendant's post-sentencing conduct similarly does not support a sentence reduction here.  *See Rodriguez*, 855 F.3d at 532.  To that end, the Court noted in the order denying his motion for compassionate release that:

> [w]hile Defendant has maintained employment and completed some educational courses while in prison, he has also committed numerous infractions, including two during the pandemic. (Docket No. 198-1). For instance, in July 2020, Defendant was being insolent and verbally disrespectful towards prison staff regarding prison lockdown procedures, and in August 2020, he circumvented prison staff to make a phone call. *Id.*

(*Id*. at 8).  More recently, in August of 2023, the BOP sanctioned Defendant for possessing a contraband cell phone.  (Docket No. 211 at 11).  It is this Court's opinion that Defendant's continued misbehavior while incarcerated strongly militates against his request for a sentence reduction.  *Cf. United States v. Whitney*, 505 F. App'x 105, 106-07 (3d Cir. 2012) (noting that the defendant did not contest that the District Court could "consider his post-sentencing conduct—possessing a cell phone, assaulting a prison officer, and refusing to obey the orders of a prison officer—in denying his motion" for a sentence reduction).

Defendant also poses a threat to public safety because he: completely disregarded the initial probationary sentence imposed by the Court in Michigan, traveled to this area and committed violent offenses with a stolen firearm; refused to accept responsibility, attacked others and perjured himself during trial proceedings before this Court; and, violated BOP policies while incarcerated.  *See e.g., United States v. Strothers*, Cr. No. 21-385-21, 2024 WL 493281, at *5 (W.D. Pa. Feb. 8, 2024) (denying motion for sentence reduction, in part, because "consideration of public safety also counsels against a sentence reduction here.").  Given same, the Court finds

that Defendant is in need of an orderly transition from a federal correctional institution to a halfway house before he is released from custody and commences supervised release. *See id.* ("It therefore stands to reason that Defendant will benefit by taking advantage of any additional available substance abuse, mental health, and vocational programs offered by the Bureau of Prisons so that he is best positioned to contribute positively to his community when he is released from custody.").

All told, the Court finds that the 155-month term of imprisonment remains sufficient, but not greater than necessary to meet all of the goals of sentencing in this case and denies Defendant's request for a discretionary sentence reduction under Amendment 821. *See Dillon*, 560 U.S. at 827.

V.     CONCLUSION

Based on the foregoing, Defendant's Motion [209] is denied, as the Court declines to exercise its discretion to reduce his sentence. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: March 8, 2024

cc/ecf: All counsel of record